# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of:<br><br>The Use of a Cell-Site Simulator to Locate the Cellular Device Assigned Call Number 414-933-6265 | )<br>)<br>)  Case No. 18-M-1229<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
☐ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☒ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:
18 U.S.C. § 1201 (kidnapping and transporting of a person across state lines), 18 U.S.C. § 2119 (armed carjacking), and 18 U.S.C. § 924(c) (brandishing a gun in furtherance of a crime of violence)

The application is based on these facts: See Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by [investigative agency].

☒ Delayed notice of  30  days (give exact ending date if more than 30 days:_____) is requested
   under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Laura S. Kwaterski, Assistant United States Attorney
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: 1/26/18

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin      William E. Duffin, U.S. Magistrate Judge
*Printed Name and Title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Robert Rice, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call number, 414-933-6265 (the "Target Cellular Device"), which is described in Attachment A.

2. I am employed as a Special Agent by the Federal Bureau of Investigation and have been so employed for approximately 13 years. My current assignment is to investigate persons involved in bank robberies, commercial robberies and other violent crime matters. I am currently assigned to the FBI's Milwaukee Area Violent Crimes Task Force. I have participated in numerous investigations involving violations of federal, state, and local laws, including investigations of bank robberies and other commercial robberies.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. One purpose of applying for this warrant is to determine with precision the location of the cellular telephone assigned number 414-933-6265 (Target Cellular Device).

However, there is reason to believe the Target Cellular Device is currently located somewhere within this district because the sole user of the device, LawRenee McCotry resides in the Eastern District of Wisconsin and as of January 22, 2018, she was located in this district. Pursuant to Rule 41(b)(2), law enforcement may locate the Target Cellular Device outside the district provided the device is within the district when the warrant is issued.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that LawRenee McCotry ("McCotry") has violated 18 U.S.C. § 1201 (kidnapping and transporting of a person across state lines), 18 U.S.C. § 2119 (armed carjacking), and 18 U.S.C. § 924(c) (brandishing a gun in furtherance of a crime of violence). McCotry was charged with these crimes on October 6, 2017 and is the subject of an arrest warrant issued on October 6, 2017. There is also probable cause to believe that McCotry is aware of these charges and has fled. There is also probable cause to believe that the Target Cellular Device's location will assist law enforcement in arresting McCotry who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

6. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

# PROBABLE CAUSE

5. On May 2, 2017, at approximately 2:30 pm, and individual known to law enforcement ("Victim 1") finished her work day as an elementary school teacher on the west side of Indianapolis, Indiana. At approximately 2:40 pm, Victim 1 arrived at the gas station associated with the Kroger supermarket at 5025 West 71st Street in Indianapolis – a location within the Southern District of Indiana. Victim 1 was driving a black 2007 Chevy Equinox. While Victim 1 was standing outside of the Equinox preparing to fill it with gas, a black male with dreadlocks who was wearing a black hoodie ("Suspect 1") and a black female (Suspect 2) approached Victim 1. Suspect 1 demanded the keys to her vehicle and showed her a pistol; he then physically removed the keys from Victim 1's hand. At that point, two other black males (Suspect 3 and Suspect 4) approached the Equinox as well. Video surveillance of the carjacking showed Suspect 3 carrying a red zip-up hoodie and wearing red colored shoes, while Suspect 4 wore a dark-colored winter hat with a fuzzy ball on its top. Victim 1 further described Suspect 3 as being a lighter skinned black male with a scar across his right eyebrow, near the bridge of his nose. Suspect 1 instructed Victim 1 to get into one of the back passenger seats, and Suspect 3 and Suspect 4 also got into the back seat. The carjackers asked Victim 1 where her cellular phone was located, and she indicated that it was in the center console area of the vehicle. During these offenses, the suspects would not allow Victim 1 to have access to her phone.

6. The group of kidnappers ultimately drove Victim 1 from Indianapolis to the Price Hill area of Cincinnati, Ohio – a location within the Southern District of Ohio. During the trip, Victim 1 was ordered to keep her head down by one of the suspects.

Victim 1 remembered hearing Suspect 3 state he had connections with both Cincinnati, Ohio and Milwaukee, Wisconsin. Victim 1 also remembered hearing one of the suspects use his phone to search for directions to Cincinnati from Indianapolis.

7. When they arrived in the Cincinnati area, they drove Victim 1's vehicle to the Price Hill Public Library, which was located at 3215 Warsaw Avenue. Upon stopping in the parking lot of the library, the kidnappers and Victim 1 exited the vehicle. Suspect 3 returned Victim 1's phone and car keys to her, possibly unbeknownst to the other kidnappers. Suspect 2 (the female) then escorted Victim 1 into the library to allow Victim 1 to use the restroom. After leaving the library, Suspect 2 accompanied Victim 1 toward to the Equinox and showed Victim 1 a pistol to ensure that she did not try to run. As Victim 1 neared the Equinox, however, the kidnappers departed the area of the library on foot, leaving Victim 1 alone. Victim 1 then drove away in the Equinox and called police once she felt like she was in a safe area. CPD responded to her location and initiated their investigation.

8. At approximately 7:00 pm on May 2, 2017, CPD contacted the Indianapolis Metropolitan Police Department (IMPD) to report the incident. CPD indicated Victim 1 was emotionally distraught when officers first spoke with her, but she had not suffered any physical injury. Most of her personal items, including her cellular phone, had been returned to her. After providing a statement to CPD, Victim 1 returned safely back to Indianapolis.

9. The following day (May 3, 2017), at approximately 12:15 pm, an individual known to law enforcement ("Victim 2") was sitting in her parked car, a maroon 2010

Honda Accord, in the vicinity of 7162 Reading Road, Cincinnati, Ohio. A black female, who was wearing a baby blue sweatshirt with the word "PINK" written along the chest in black letters, approached Victim 2 and asked her for a ride. A surveillance video that captured the incident showed that the black female was consistent with – and is believed to be – the individual named as Suspect 2 above. Shortly after she asked for a ride, a black male with unkempt dreadlocks who was wearing a black hoodie and black shoes with red laces also approached Victim 2. The male appeared to be consistent with – and is believed to be – the individual named as Suspect 1 above. The male immediately told Victim 2, "Bitch, get out the car. I have a gun." Victim 2 quickly exited her vehicle, and Suspect 1 and Suspect 2 entered the Honda. Victim 2 watched them drive down a nearby street to a Shell gas station, where they stopped the Honda momentarily as two to four more subjects entered it. The Honda then drove out of Victim 2's sight. CPD responded to the scene of the carjacking and initiated an investigation.

10. Based on surveillance footage available near the scene of the carjacking of the Accord, the assigned CPD detective determined that Suspect 1 and Suspect 2 came from the general direction of Woodward Traditional High School at 7005 Reading Road. The detective spoke with administrators at the school, and they allowed him to view security footage from the facility. Footage near where entry into the school is allowed to students and their guests showed individuals the detective identified Suspect 1 and Suspect 2 standing near the main office shortly before the time of the carjacking on May 3, 2017. The detective recognized them due to their clothing and hairstyles, which closely matched those captured by the surveillance footage near the scene of the carjacking. The

school's footage showed Suspect 1 and Suspect 2 meeting with a black female and a group of black males before Suspect 1 and Suspect 2 departed from the school. Administrators determined that the black female with whom they met was a student of their school, and they provided the name and contact information for this student to CPD.

11. The CPD detective contacted the student, who stated that she was acquainted with both Suspect 1 and Suspect 2 and that they were both residents of Milwaukee, Wisconsin. She identified Suspect 1 as "Nikey" and Suspect 2 as "Strawberry." The student further stated that "Strawberry's" Facebook account is under the name "LawRenee McCotry" and gave a contact phone number for "Strawberry." The student also said that she believed "Nikey" was back in Milwaukee, Wisconsin and had recently been arrested there. Upon reviewing the Facebook account for Suspect 2 provided by student, the profile picture contains a photograph of a black female. Upon comparing this photograph and other pictures of the owner of the account with surveillance videos capturing the carjacking and kidnapping of Victim 1 on May 2, 2017, law enforcement officers believe the female pictured in the account strongly resembles Suspect 2.

12. Another carjacking appearing to be connected with the previous two occurred on May 4, 2017. On that day, an individual known to law enforcement ("Victim 3") was standing outside of her car – a blue 2015 Volkswagen Passat – in the vicinity of 2118 St. Michael Street, Cincinnati, Ohio. This address was approximately five minutes away from the Price Hill Public Library. The vehicle was a 2015 blue colored Volkswagen Passat. A black male with unkempt dreadlocks, a black hoodie with white or gray strings

hanging down from the hood, and black shoes with red laces approached Victim 3 on foot. A black female was with him. Based on a review of the available surveillance video that showed the ensuing carjacking, the black male is believed to be Suspect 1, as previously described. Suspect 1 brandished a gun and demanded Victim 3's car keys. Victim 3 provided them with the keys, and Suspect 1 and the black female entered the Passat and drove away with all of Victim 3's personal property still inside of it. Victim 3 then contacted CPD and filed a report.

13. On May 8, 2017, police recovered the Passat from the vicinity of 7300 West Fond Du Lac Avenue, Milwaukee, Wisconsin. Nearby witnesses informed responding officers from the MPD that they had seen four black males and one black female flee from the vehicle. One of the black males was reportedly carrying a rifle. The officers investigated the vehicle and saw that it had sustained physical damage to its exterior. Upon checking the license plate in the police database, MPD learned that the vehicle had been stolen from Cincinnati, Ohio four days prior and a MPD officer contacted CPD investigators.

14. Based upon the information obtained from the Woodward High School student, case agents contacted the Milwaukee Division of the FBI, and case agents identified Suspect 1 as being Christian Lovies, a black male with a date of birth XX/XX/1999. Lovies was a known resident of Milwaukee, Wisconsin and had an extended list of interactions with the MPD. Case agents also identified the owner of the "LawRenee McCotry" Facebook account to belong to a black female resident of

Milwaukee with a date of birth XX/XX/99. This female was MCCOTRY as previously identified in this Affidavit.

15. The FBI Milwaukee Division provided historical booking photographs of MCCOTRY and the other identified subjects to the FBI Indianapolis Division, which in turn provided them to the IMPD and CPD detectives assigned to their respective facets of the investigation. The detectives then showed photo arrays to each of their victims. These photo arrays contained six photographs of similar-looking men or women without displayed names; one of those individuals pictured was either MCCOTRY or the other defendants. Between May 26 and May 30, 2017, the assigned CPD detectives separately presented their photo arrays to Victim 2. Victim 2 positively identified MCCOTRY as Suspect 2 for the May 3, 2017 carjacking. On May 31, 2017, Victim 1 also positively identified MCCOTRY as Suspect 2 in a photo array conducted with the Indianapolis Division of the FBI and the IMPD.

16. On October 6, 2017 a Magistrate Judge in the Southern District of Indiana authorized a federal warrant for MCCOTRY's arrest in case number 1:17-mj-867. However, since that time, all involved law enforcement have been unable to locate MCCOTRY in order to effectuate her arrest for the above-described incidents.

17. On January 3, 2018, the Social Security Administration ("SSA") provided the Indianapolis Division of the FBI with information on MCCOTRY. Specifically, it provided Indianapolis with a confirmation that she was receiving payments from the SSA. According to the SSA, her most current registered address was 4528 North 67th

Street, Milwaukee, Wisconsin. Indianapolis then forwarded this information on to the Milwaukee Division of the FBI for further action.

18. On January 23, 2018, case agents conducted a knock and talk of the residence of 4528 North 67th Street, Milwaukee, Wisconsin. Case agents made contact with Lawrence McCotry ("L. MCCOTRY"), who is MCCOTRY's father. L. MCCOTRY cooperated with the investigation and allowed the FBI to search his home in pursuit of his daughter. The search was unsuccessful, and L. MCCOTRY stated that he had dropped MCCOTRY at Milwaukee Area Technical College, 700 W. State Street, Milwaukee, WI at approximately 10:00 a.m. on January 22, 2018 and MCCOTRY had not returned home since. L. MCCOTRY did not know her current whereabouts. L. MCCOTRY provided case agents with the Target Cell Phone as MCCOTRY's only known cellular telephone number and primary means of communication. L. MCCOTRY contacted MCCOTRY on the Target Cell Phone in the affiant's presence. L. MCCOTRY had the Target Cell Phone saved in his contact list as "Lawrenee." MCCOTRY answered the phone after which L. MCCOTRY advised her that she needed to return home as the FBI wanted to talk with her. MCCOTRY hung up the phone. Several minutes later, L. MCCOTRY received a text message from the Target Cell Phone asking L. MCCOTRY if he was being serious about the FBI looking for her. L. MCCOTRY advised her that there was a warrant for her arrest and that MCCOTRY should contact the affiant telephonically as soon as possible. L. MCCOTRY provided your affiant's cell phone number to MCCOTRY.

19. On January 25, 2018, at approximately 2:30 p.m., your affiant was contacted by MCCOTRY, who appeared to be using phone number 608-579-4109. The connection

during the call was poor and there was an echo of your affiant's voice and MCCOTRY only responded to the echo of your affiant's voice, not when your affiant spoke and based upon this, your affiant believes that MCCOTRY may have spoofed the number. Caller ID spoofing is a service that allows a caller to masquerade as someone else by falsifying the number that appears on the recipient's caller ID display and is relatively easy to do. During the conversation, MCCOTRY said she was going to turn herself in, but wouldn't say when she was going to do so. McCotry confirmed to your affiant that she was aware that there was a warrant for her arrest and that she was aware of what the charges were. During the conversation, McCotry's speech was slow and your affiant believes McCotry may have been under the influence of either drugs or alcohol.

20. Case agents provided the Target Cell Phone to the Indianapolis Division of the FBI for further investigation. Case agents from Indianapolis entered the digits of the Target Cell Phone into the search bar of the website www.facebook.com. This was done in order to see if any Facebook user had registered the number with his or her personal account created on the website. The search elicited only one positive result. Based on the results of the search, the Target Cell Phone was actively registered to the Facebook account previously identified as belonging to MCCOTRY.

21. Based on information obtained from MCCOTRY's father, she is the sole user and owner of the Target Cell Phone. MCCOTRY had multiple communications, both

calls and texts, from the Target Cell Phone with L. MCCOTRY in your affiant's presence, and the Target Cell Phone is linked to MCCOTRY's known Facebook account.

## MANNER OF EXECUTION

22. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

23. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from nearby cellular devices, including the Target Cellular Device. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Device and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

24. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the

interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

## AUTHORIZATION REQUEST

25. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

26. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify

confederates, and [continue to] flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Device outside of daytime hours.

28. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

Robert Rice
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
On: 1/26/18

William E. Duffin
United States Magistrate Judge

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number 414-933-6265, whose wireless provider is Metro PCS, and whose listed subscriber is unknown.

# ATTACHMENT B

Pursuant to an investigation of LawRenee McCotry for violations of 18 U.S.C. § 1201 (kidnapping and transporting of a person across state lines), 18 U.S.C. § 2119 (armed carjacking), and 18 U.S.C. § 924(c) (brandishing a gun in furtherance of a crime of violence), this Warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment A by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).